CASE 10—MOTION—SEPTEMBER 19.

# Hobson and sureties vs. Commonwealth.

APPEAL FROM THE FRANKLIN CIRCUIT COURT.

1. In March, 1858, Page, then Auditor, obtained judgment against a sheriff and his sureties, on a certified account, registered as required by law, for over $6,000, " being the balance of revenue due from said sheriff for the year 1857." In 1863, Green, the successor of Page, made a motion in the same court, against the same defendants, for another judgment on an account revised and changed so as to show a larger balance for the same year.   *Held*—That the latter motion was barred by the judgment of 1858.

2. There is no difference in this respect between a judgment in such a judicial procedure, and any other judgment in any other form of suit.

3. The official acts of Auditor Page were the acts of the Commonwealth ; his adjustment of accounts with sheriffs for revenue was made conclusive, unless changed by a direct proceeding for correcting errors committed by him ; and his *quietus* was equally conclusive.

4. A plea of full payment, verified by the Auditor's quietus, is a good defense to such motion.

J. R. UNDERWOOD, for appellants, cited *secs.* 1, 2, 4, 6, *and* 13, *art.* 12, *and secs.* 3 *and* 6, *art.* 9, *chap.* 83, 2 *R. S.; secs.* 10 *and* 14, *art.* 1, *chap.* 5, 1 *R. S.; sec.* 9, *art.* 3, *chap.* 63, 2 *R. S.; Civil Code, secs.* 118, 125, *and* 484 ; *ex parte Robert B. Randolph*, 2 *Brock.*, 447 ; *Watson vs. Gabby*, 18 *B. Mon.*, 662 ; *Jones & Lee vs. Bullock, &c.*, 3 *Bibb*, 469 ; *Sneed's ex'r vs. White*, 3 *J. J. Mar.*, 526 ; *Norton vs. Roberts*, 4 *Mon.*, 491 ; *Bacon's Abridgment*, 7 *vol.*, " *Pleading a recovery in a former action,*" *pp.* 633, 636, 637 ; 6 *Coke*, 44, *Higgin's case*, 635.

JAMES HARLAN, Jr., on same side, cited *Revised Statutes, titles "Auditor"* and *" Revenue and Taxation;*" *Cain vs. Flynn*, 4 *Dana*, 499 ; *Maddox, &c., vs. Graham, &c.*, 2 *Met.*, 56 ; *Garrard vs. Nuttall, Id.*, 106 ; *Brightley's U. S. Digest*, 18 ; *ex parte Robt. B. Randolph*, 2 *Brockenborough*, 447 ; *Mills vs. Collett*, 6 *Bingham*, 85 ; *Eng. Com. Law Rep.*, 11–14 ; *Perkins vs. Hart*, 11 *Wheat.*, 237.

E. L. VANWINKLE for Commonwealth.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The statutory law of Kentucky requires the Auditor of Public Accounts to audit all the accounts of the collection of the revenue or other public money, and of all other public debts, and to "so keep the accounts *that they will truly and clearly exhibit the amount of all moneys paid into the treasury*, by whom, and for what account paid." And the same law provides, that, "if any sheriff shall fail to account for and pay into the treasury as required by law, the Auditor shall proceed in the name of the Commonwealth, by motion or suit, *without notice to the parties*, to collect *the same* by judgment and execution against such sheriff, &c., at the next or any subsequent term succeeding such defalcation." And also, that, "if, in settlement with the Auditor, a mistake has been committed, the same may be corrected by application to the general court within *two years*." A late statute has substituted the Franklin circuit court as the fiscal court.

Pursuant to this authority, and in fulfillment of this legal injunction, *Thomas S. Page*, then the Auditor, obtained, on motion in the Franklin circuit court, a judgment against William J. Hobson, sheriff of Warren, and the sureties in his official bond, on the 3d of March, 1858, for $6,198 52, "*being the balance of revenue due from said sheriff for the year* 1857." That judgment was rendered on a certified account kept and registered by the said Auditor as prescribed by law. And so the matter rested without question or disturbance until the 24th of June, 1863, when a motion was made in the same court against the same defendants for another judgment on an account revised and charged by Page's successor, *Grant Green*, so as to exhibit a balance of $16,610 01 for the same year of 1857. To that motion the sureties and the administrator of the sheriff, then dead, appeared and urged a dismission of the motion as unauthorized by the official account kept by Page, and also barred by time. Their motion to dismiss being overruled, they filed an answer, relying on three separate grounds of defense—1st. The former judgment pleaded as a bar; 2d. Full payment of the sum *for which this motion is made*, and the *quietus* of the Auditor alleged to be lost; and 3d. The conclu-

siveness of Page's settlement and registered account, and the
want of authority in his successor to overrule or change it.
But a demurrer to these several defenses being sustained, and
the defendants not answering further, but excepting, the court
rendered judgment for $16,602 91, with interest from the 1st of
June, 1857, "being the balance of revenue due by said sheriff
for the year 1857," and also gave judgment for $3,322 18 as
20 per cent. damages.

This appeal calls for a revision of that judgment. The
foregoing facts present an extraordinary case, which wears
the semblance of injustice somewhere or somehow. And it
seems to us that the error may be found in the last judgment.
In our opinion, it is altogether erroneous, and the motion for
any judgment ought to have been dismissed; and we think that
the demurrer ought to have been overruled as to each of the
defenses set up in the answer. The judgment of 1858 was a
bar to this suit on the same liability. As a motion was the
authorized and regular form of suit, we are unable to see why
the judgment of 1858 should not bar another litigation on the
same form on the account for the same year. The indebted-
ness for that year was an entirety. The account was a unit,
and, altogether, was a single and the same cause of action.
That cause of action was merged in the judgment which con-
cluded the whole liability. No residual cause of action re-
mained on any fragmentary portion of the entire liability
which may have been pretermitted on the account as then
registered. And if the State did not get enough, the fault was
her own. The judgment, therefore, ought to bar any other
suit on the sheriff's liability for 1857, as certainly as the judg-
ment last rendered, if affirmed, should operate as a bar to a
new motion hereafter for judgment on the same account cor-
rected again. In this respect, we cannot discriminate between
such a judgment in such a judicial procedure, and any other
judgment in any other form of suit. Public policy and indi-
vidual security and repose forbid a relitigation of the same
cause of action, after one fair and final decision on the rights
of the same parties. Any other doctrine would license negli-
gence, encourage fraud, invite vexatious oppression, and uni-

versally shake the stability and effect of solemn judgments. This is the philosophy of the rule. And why should not a rule so provident, so salutary, and so general, apply to this as well as to other cases? We adjudge that it does, and the State cannot maintain any other suit for a supplemental judgment on the account for 1857, unless it shall have been corrected, and the balance enlarged, in the judicial mode prescribed by statute. The official acts of Auditor Page were *her* acts. He was her accredited organ, with full power and discretion to settle, and record as settled, accounts of sheriffs for revenue due to her. And, with his delegated trust, he was an umpire between her and the debtors. His adjustment, once closed and registered by him, was made conclusive, unless changed by a direct judicial proceeding for the purpose of correcting any error or mistake committed by him. And, subject to the same qualification, his *quietus* was conclusive; and neither the State nor the sheriff could go behind or controvert it on a motion for judgment on the account. The Auditor himself was *functus officio*, and could not change the registered account by his own act. If he could, the statute would not have given him the power to make such correction in a judicial mode of procedure against the sheriff. The delegation of such special authority necessarily implies that, without such express delegation, he would have had no discretion, and that he could not before, and certainly cannot since, that enactment, make any change by his own act. And, of course, his successor could make no correction, and especially after two years, within which period even a suit for correction is expressly limited by law. Other considerations arising from other statutory provisions, as herein recited, from the nature of such a ministerial trust, and from many familiar analogies, would lead clearly to the same conclusion.

We do not mean to say that the account could not be corrected in any other mode than that which the statute prescribes. We would be inclined to think that a correction might be effected by a suit in chancery for fraud or mistake, instituted within two years after registry. But we do decide that no such change or correction can be made by the registering Auditor or his successor.

An act of Congress (1820, *Brightley's Dig.*, 18) provides that, "if any collector of the revenue, or other officer who shall have received the public money before it is paid into the Treasury of the United States, shall fail to render his account or pay over the same in the manner or within the time required by law, it shall be the duty of the First Comptroller of the Treasury to cause to be stated the account of such collector of the public money, or other officer, exhibiting *truly* the amount due to the United States, and certify the same to the agent of the. treasury, who is hereby authorized and required to issue a warrant of distress against such delinquent officer and his sureties."

Under that enactment the account of Robert B. Randolph (lieutenant and purser in the navy) was settled in 1828, for that year, by the comptroller. In 1833, the successor of that accountant revised and restated it, so as to exhibit a much larger balance against Randolph. And, to enforce that augmented account, a distress warrant was issued against him. But the legality of the proceeding coming before the circuit court of the United States for Virginia, consisting of Chief Justice Marshall and Justice Barbour, they decided that the settlement first made by the comptroller was final and conclusive until assailed by a direct suit for correcting it for mistake or fraud; and *thus "surcharge and falsify"* the account.

That case and this are essentially analogous, and, in principle, identical. And the elaborate and powerful argument of that court would apply to this case as fully as to the one adjudged, and even more certainly and conclusively because the Kentucky law, *unlike that of the United States*, prescribes the mode and the time of correcting mistakes and errors in all such audited and registered accounts, thereby clenching the conclusion that the Auditor cannot revise and correct his own final and recorded settlement. And, as that decision sufficiently fortifies our own independent view of the question, we will not enlarge this opinion by further argument on the many analogies and absurd consequences opposing a contrary doctrine. The circuit court, therefore, erred in not dismissing the motion for judgment against the appellants; and, consequent-

ly, it erred in sustaining the demurrer to the first and third paragraphs of defense in the answer.

And we are of the opinion that the court, moreover, erred in sustaining the demurrer to the second ground relied on in the answer.

We cannot perceive why a plea of payment of the full amount sought to be recovered, verified by the Auditor's *quietus*, should not be a good bar to the motion for a judgment for the sum so alleged to have been paid. Such payment, if made, would certainly entitle the appellants to exoneration. The demurrer acknowledged the truth of the allegations, and no court could judicially assume, from any fact or estoppel in the record, that any one of the allegations was false.

Wherefore, on each and all of the grounds of defense relied on in the answer, the judgment of the circuit court is reversed, and the cause remanded, with instructions to dismiss the motion for judgment on the account on which the Attorney General, at the instance of Page's successor, proceeded in this case.